UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
DAVID ZONSHAYN,

                  Plaintiff,

-against-

SACKLER SCHOOL OF MEDICINE (NEW YORK) and TEL AVIV UNIVERSITY,

                  Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/3/2023_

21 Civ. 5720 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    In this action against Defendants Sackler School of Medicine (New York) ("SSM (NY)") and Tel Aviv University ("TAU"), Plaintiff, David Zonshayn, seeks injunctive relief and damages under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–88, and asserts state law causes of action for breach of contract, promissory estoppel, intentional infliction of emotional distress, and fraudulent inducement. *See* TAC ¶¶ 136–215, ECF No. 64. Defendants move to dismiss the Third Amended Complaint ("TAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 66, and TAU moves to dismiss the TAC under the doctrine of *forum non conveniens* or, alternatively, for lack of personal jurisdiction pursuant to Rule 12(b)(2), ECF No. 69. For the reasons stated below, Defendants' motions are GRANTED in part and DENIED in part.

## BACKGROUND[1]

### I.    Parties

    Zonshayn is a citizen of Pennsylvania and has been a student at TAU's medical school since 2018. TAC ¶¶ 1, 2b. TAU is an Israeli public university located in Ramat Aviv, Israel, and its

---

[1] The following facts are taken from the TAC and declarations filed by the parties. The facts in the TAC "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015). "When jurisdictional facts are in dispute, the district court may

medical school, the Sackler School of Medicine,[2] *id.* ¶ 4b, operates three different programs for the M.D. degree, Lipkin-Zur Decl. ¶ 5, ECF No. 71. Two programs are open to Israeli students and taught primarily in Hebrew. *Id.* The third program is the American Medical Program, also referred to as the "New York State/American Program" (the "Program"), and taught primarily in English. TAC ¶ 4b; Lazar Decl. ¶ 5, ECF No. 70; Lipkin-Zur Decl. ¶¶ 5, 7. The Program is registered with the New York State Education Department, and "accredited as a New York State medical school for the award of the M.D. degree." Lipkin-Zur Decl. ¶ 7. The Program only accepts American and Canadian students, who partake in elective rotations and start residency programs in the United States. TAC ¶ 6b; Lipkin-Zur Decl. ¶¶ 6, 8.

SSM (NY) is a New York educational corporation located in Manhattan. TAC ¶ 3b; Lazar Decl. ¶¶ 1, 3. TAU contracted SSM (NY) to operate and maintain the Program. Lazar Decl. ¶ 5. SSM (NY)'s staff consists of five employees, including an executive dean, a director of admissions and alumni affairs, and a financial aid coordinator. Lazar Decl. ¶ 7. SSM (NY) performs administrative functions for the Program, including evaluating applications from prospective students, receiving tuition payments, assisting students in obtaining financial aid, coordinating student elective clinical rotations in the United States and Canada, and assisting program graduates with applications for post-graduate fellowships. Lazar Decl. ¶ 12. SSM (NY) receives U.S. government funding. TAC ¶ 3b.

II.     Factual Background

On July 23, 2020, Zonshayn was called to appear before TAU's professionalism committee, comprised of faculty and staff from TAU's medical school, after he was accused of sexually

---

consider materials outside the pleadings, including affidavits and other written materials." *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 202 (S.D.N.Y. 2019).
[2] TAU's Sackler School of Medicine is a different entity from SSM (NY), which is one of the defendants in this case and described in further detail below.

inappropriate behavior and unprofessionalism. TAC Ex. A at 12, ECF No. 64-1. Zonshayn denied the allegations, but the committee found the allegations credible and directed him to write an essay regarding the alleged misconduct. *Id.*

On April 29, 2021, Zonshayn was again called before the committee and informed that several female students accused him of misconduct. TAC ¶ 13. Zonshayn allegedly "took his pants off in front of students, exposing his rear end; made sexually inappropriate comments; called two girls in the class 'nurses'; got drunk and violent at parties; was disruptive once on Zoom; and disrupted a lecturer with poor English." *Id.* Zonshayn denied each allegation. *Id.* After the meeting, the committee referred the complaints to TAU's Commissioner for the Prevention of Sexual Harassment, Tamar Brosh, and forbade Zonshayn from having any contact with the classmates in his program during the pendency of the investigation. *Id.* ¶¶ 13, 16.[3]

On May 4, 2021, Zonshayn met with Brosh, who gave Zonshayn a verbal summary of the complaints against him and afforded him an opportunity to respond. TAC ¶ 16. Following the meeting, Brosh recommended to TAU's Academic Secretary, Sharon Feldman, that Zonshayn be suspended during the pendency of the investigation. *Id.* ¶ 38. On May 20, 2021, Feldman sent an email to Zonshayn outlining the "details of the main allegations" against him and allowing him until May 27, 2021, to respond in writing. *Id.* On May 27, 2021, Zonshayn did so. *Id.* ¶ 39.

On June 4, 2021, Feldman responded to Zonshayn's email. *Id.* ¶ 44. Feldman decided not to suspend Zonshayn and instead permitted him to continue his studies under the condition that he continue to avoid contact with any students involved with the claims against him. *Id.* ¶¶ 44, 51.

---

[3] According to the Regulations for Prevention of Sexual Harassment at TAU ("TAU's Harassment Regulations"), the heads of academic units are responsible for reporting to the University Commissioner for the Prevention of Sexual Harassment "any case where they learn of a suspicion of Sexual Harassment or Pestering." Baum Decl. Ex. 1 ¶ 4A1, ECF No. 67-1. In accordance with TAU's Harassment Regulations, the Commissioner may also recommend "interim remedies . . . during the period of the complaint's inquiry, the purpose of which is to separate the Accused from the [Complainants]." *Id.* ¶ 7.1. TAU's Harassment Regulations are implemented pursuant to Israel's Prevention of Sexual Harassment Law, 5758-1998. Baum Decl. Ex. 2 ¶ 7, ECF No. 67-1.

Feldman informed Zonshayn that the matter required further investigation, and that he would be assigned to participate in an OB/GYN rotation with the medical students in the Hebrew-track program, rather than those in the Program. *Id.* ¶¶ 44, 52. On June 20, 2021, Zonshayn began the six-week OB/GYN rotation in Israel. *Id.* ¶¶ 57, 72.

On July 8, 2021, Zonshayn filed a written complaint with the Professionalism Committee against the four students who had lodged complaints against him, accusing them of "bullying, defamation, and malicious competition." *Id.* ¶¶ 8a, 85–86, 102. He alleged that "these four women ganged up against [him] and filed false, exaggerated, and twisted accusations in order to ruin [his] career." TAC Ex. B at 4, ECF No. 64-2. Zonshayn's complaint was referred to Brosh. TAC ¶ 93.

In an August 17, 2021 email, Brosh informed Zonshayn that she would send him follow-up questions and additional complaints that were raised during her investigation, which had included numerous witness interviews. *Id.* ¶ 111. On August 26, 2021, Brosh emailed Zonshayn the new allegations raised by three faculty members and two other students, *id.* ¶¶ 113, 116, and on September 9, 2021, Zonshayn responded to those accusations, *id.* ¶ 116.

On October 24, 2021, Brosh submitted a summary report to Feldman recommending that TAU initiate disciplinary proceedings against Zonshayn for sexual harassment and unprofessional conduct. *Id.* ¶¶ 119, 130. On November 16, 2021, Feldman emailed Zonshayn a letter stating that she had adopted Brosh's conclusions. *Id.* ¶ 119. In January 2022, TAU's Student Disciplinary Tribunal lodged a formal complaint against Zonshayn and commenced disciplinary proceedings against him. ECF No. 66 at 12; Lipkin-Zur Decl. ¶ 13.

III. <u>Procedural History</u>

On July 1, 2021, while Brosh's investigation was ongoing, Zonshayn filed this action. ECF No. 1. On August 13, 2021, Zonshayn filed an amended complaint, in which he added SSM (NY) as a defendant, deleted an improperly named defendant, and added factual allegations. ECF No. 15. On

4

November 16, 2021, Zonshayn requested leave to file another amended complaint, ECF No. 32, which the Court granted the next day, ECF No. 33. On December 1, 2021, Zonshayn filed the Second Amended Complaint ("SAC"), in which he added more factual allegations. ECF No. 34.

On January 31, 2022, TAU filed a motion to dismiss the SAC under the doctrine of *forum non conveniens* or, alternatively, for lack of personal jurisdiction, ECF No. 42, and Defendants filed a motion to dismiss the SAC for failure to state a claim, ECF No. 48. On February 21, 2022, instead of filing opposition papers, Zonshayn filed the TAC. ECF No. 56. In the TAC, Zonshayn brings seven causes of action: three claims for violations of Title IX, TAC ¶¶ 136–83, and claims under New York law for breach of contract, promissory estoppel, intentional infliction of emotional distress, and fraudulent inducement, *id.* ¶¶ 184–215.

On March 14, 2022, Defendants filed the instant motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), ECF No. 66, and TAU filed a motion to dismiss under the doctrine of *forum non conveniens* or, alternatively, for lack of personal jurisdiction under Rule 12(b)(2), ECF No. 69.

**DISCUSSION**

I.  Personal Jurisdiction

The Court first addresses the threshold issue of personal jurisdiction. Defendants concede that the Court has personal jurisdiction over SSM (NY), but argue that the Court lacks personal jurisdiction over TAU. ECF No. 69 at 20–28. Zonshayn contends that the Court has specific personal jurisdiction over TAU. ECF No. 77 at 22. Zonshayn does not argue that the Court has general jurisdiction over TAU. *See id.*

A.  Legal Standard

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction." *BWP Media USA Inc. v. Hollywood Fan*

5

*Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). "Because the Court has not held an evidentiary hearing on this issue, Plaintiff need only make a prima facie showing of jurisdiction through affidavits and supporting materials to satisfy this burden." *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673, 2012 WL 123989, at *3 (S.D.N.Y. Jan. 3, 2012); *see also Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) ("In deciding a motion to dismiss . . . for want of personal jurisdiction, the district court may consider materials outside the pleadings, including affidavits and other written materials.").

"District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction, . . . and second deciding whether the exercise of jurisdiction comports with due process." *BWP Media*, 69 F. Supp. 3d at 349 (quotation marks and citations omitted). First, in a federal question case, the district court applies the forum state's long-arm statute, unless the federal statute at issue specifically provides for national service of process. *Id.* at 350. Second, the due process analysis "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). With respect to minimum contacts, a court "determine[s] whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). And with respect to the reasonableness inquiry, personal jurisdiction comports with due process if "the defendant has certain minimum contacts with the [s]tate such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (cleaned up). "The Supreme Court has held that courts must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in

6

adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe*, 616 F.3d at 164 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113–14 (1987)).

B. Analysis

In New York, to establish specific personal jurisdiction, a plaintiff must demonstrate "that the defendant committed acts within the scope of New York's long[-]arm statute, C.P.L.R. § 302." *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 153 (S.D.N.Y. 2020) (cleaned up). Section 302(a)(1) provides that a court may exercise personal jurisdiction over a non-domiciliary who "in person or through an agent," "transacts any business within the state or contracts anywhere to supply goods or services in the state," N.Y.C.P.L.R. § 302(a)(1), so long as the claim "arises from that business activity," *Herod's Stone*, 434 F. Supp. 3d at 154 (alteration and citation omitted). A defendant "transacts business" within § 302(a)(1) where it "purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of [the state's] laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citation omitted). A claim "arises from" business activity when there is "some articulable nexus between the business transacted and the cause of action sued upon" or when "there is a substantial relationship between the transaction and the claim asserted." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 273 (1981), and *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

Here, the TAC pleads facts which establish that TAU transacts business and contracts to supply goods and services within New York, and that Zonshayn's claims arise from that business activity. *See* N.Y.C.P.L.R. § 302(a)(1). In the TAC, Zonshayn alleges:

7

> (a) Defendant [SSM (NY)] is a domestic not-for-profit corporation organized under the laws of the State of New York and which does business as Defendant [TAU] Sackler School of Medicine located in N[ew] York; (b) Defendant [TAU] through [the Program] purposefully reached out from Israel and availed itself of New York State for the Sackler School of Medicine to qualify its [Program] students; (c) Defendant [TAU] through its [SSM (NY)] is doing business in New York as a New York educational corporation, where it maintains the Office of the Dean of [SSM (NY)], contact information for American applicants of the . . . Program, and recruits applicants for the . . . Program; (d) the underlying controversy relates to New York, as [Zonshayn's] ability to be licensed in New York to be a doctor is jeopardized by the suspension . . . . "[The Program], Program Code 77319, affiliated with [TAU], is registered and accredited as a New York State medical school for the award of the MD degree." Defendant [TAU] through its SSM [(NY)] posted the letter in order to attract American students to the medical school . . . .

TAC ¶ 10. Defendants concede that TAU contracted SSM (NY), a New York corporation, to provide administrative support, including "receiving and evaluating applications from prospective students seeking admission to the Program; receiving tuition payments for students enrolled in the Program; and assisting students with obtaining financial aid and placements in fourth-year electives in the U.S. or Canada." ECF No. 73 at 5; *see* Lazar Decl. ¶ 12. Further, the Program is registered with the New York State Education Department and accredited as a state medical school. Lipkin-Zur Decl. ¶ 7. The Program only solicits and accepts applications from American and Canadian students, who are placed in elective rotations in the United States and prepared for American residency programs. *Id.* ¶¶ 6, 8. Thus, Zonshayn's allegations, along with the evidence in "affidavits and other written materials" that the Court may consider in resolving a motion to dismiss for lack of personal jurisdiction, demonstrate that TAU transacts business in New York. *Jonas*, 116 F. Supp. 3d at 323.

Further, Zonshayn's claims "arise from" this business because there exists "some articulable nexus between" TAU's business in New York and Zonshayn's ability to receive an accredited medical degree and become a licensed doctor in New York. *Sole Resort, S.A. de C.V.*, 450 F.3d at 103. Zonshayn alleges that his "ability to be licensed in New York to be a doctor is jeopardized by

8

the suspension," TAC ¶ 10, because TAU would disclose the disciplinary claims against him in his applications to electives at American universities, TAC ¶¶ 74, 81, and the suspension affected his ability to take the U.S. Medical Licensing Exam, TAC ¶¶ 45–46, 115.  Zonshayn's claims arise from these alleged injuries.  *See* TAC ¶¶ 169–70, 174–75, 182–83, 191, 198, 208, 214.

Because the New York long-arm statute permits personal jurisdiction, the Court next analyzes whether personal jurisdiction comports with due process.  TAU's ties to New York satisfy the "minimum contacts" analysis for substantially the same reasons that they satisfy New York's long-arm statute.  Namely, TAU developed the Program, which is registered with the New York State Education Department and accredited as a New York medical school.  It contracts with SSM (NY), a New York corporation, to solicit and evaluate applications from New York residents.  TAU prepares its students for rotations and residencies in New York—and facilitates those placements.  Therefore, TAU has "purposefully availed [itself] of the privilege of conducting activities within [New York], thus invoking the benefit and protections of its laws." *Chloe*, 616 F.3d at 171 (alteration and quotation omitted).

In addition, the exercise of personal jurisdiction in this case comports with fair play and substantial justice.  The reasonableness factors weigh in favor of finding personal jurisdiction.  *See Chloe*, 616 F.3d at 164.  First, for TAU, a large university with a medical school program that is registered and accredited in New York, the burden of litigating in the Southern District of New York is not unreasonable.  The documents pertaining to Zonshayn's disciplinary proceedings have already been translated from Hebrew into English, *see* ECF No. 77 at 24, and the burden on TAU to travel to New York is minimal.  Second, New York has an interest in the resolution of this case because the Program is an accredited state medical school, New York residents are recruited to participate in the Program, and the graduates of the Program receive M.D. degrees and are poised to start residency programs in the United States, including within New York.  Third, Zonshayn has an interest in

9

litigating within his home country, in English, and with familiar laws. *See id.* at 25. The final two factors favor neither party, as witnesses are in both Israel and New York, *see* ECF Nos. 73 at 26; 77 at 26, and the shared interest in furthering fundamental substantive social policies does not cut in favor of either forum. *See Chloe*, 616 F.3d at 173. Exercising personal jurisdiction over TAU comports with "traditional notions of fair play and substantial justice," *Int'l Shoe,* 326 U.S. at 316, such that it satisfies the reasonableness inquiry of the Due Process Clause.

Accordingly, TAU's motion to dismiss the TAC for lack of personal jurisdiction is DENIED.

II. <u>Failure to State a Claim</u>

The Court, having established jurisdiction over Zonshayn's claims against both Defendants, now turns to Defendants' 12(b)(6) arguments.

A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

B. Analysis

1. Title IX (Claims One to Three)

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex for individuals in the United States participating in federally funded educational programs, and the statute further provides protections against sexual harassment or sexual discrimination. The Court concludes that Zonshayn fails to state a claim for his Title IX causes of action because Title IX does not apply extraterritorially.

A federal statute does not apply to foreign conduct unless "Congress has affirmatively and unmistakably instructed that the statute will do so." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016). This principle stems from the canon of statutory construction known as the presumption against extraterritoriality: "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id.* "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).

When analyzing extraterritoriality issues, district courts apply "a two-step framework." *RJR Nabisco*, 579 U.S. at 337. At the first step, courts "ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* At the second step, courts "determine whether the case involves a domestic application of the statute, and . . . do this by looking to the statute's 'focus,'" and whether the "conduct relevant to the statute's focus occurred in the United States." *Id.*

Here, far from rebutting the presumption against extraterritoriality, the plain text of Title IX makes clear that the statute only applies to domestic conduct: "No person *in the United States* shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (emphasis added). Since *Morrison*, where the Supreme Court outlined the presumption against extraterritoriality, *see* 561 U.S. at 255, district courts that have considered this question have also held that Title IX does not apply extraterritorially. *See, e.g.*, *Doe T.L.J. v. Univ. of Cent. Mo.*, No. 20 Civ. 714, 2020 WL 7700101, at *2 (W.D. Mo. Dec. 28, 2020); *Harbi v. Mass. Inst. Tech.*, No. 16 Civ. 12394, 2017 WL 3841483, at *3–4 (D. Mass. Sept. 1, 2017); *see also Phillips v. St. George's Univ.*, No. 07 Civ. 1555, 2007 WL 3407728, at *2–5 (E.D.N.Y. Nov. 15, 2007) (pre-*Morrison* decision holding that Title IX did not apply extraterritorially to American student at Grenada veterinary school who was allegedly sexually harassed in Grenada by a school employee).

The Court rejects Zonshayn's reliance on *King v. Board of Control of Eastern Michigan University*, 221 F. Supp. 2d 783 (E.D. Mich. 2002), to support his contention that Title IX applies to foreign conduct. ECF No. 76 at 19–22. In *King*, the court set aside the "plain language of the statute" and instead looked to legislative history to divine "unexpressed congressional intent" and determine that Title IX applies to foreign conduct. *King*, 221 F. Supp. 2d 787 (citation omitted). However, *King* predates *Morrison*, in which the Supreme Court did not adopt that approach to statutory construction as to extraterritoriality. *See Morrison*, 561 U.S. at 261 ("The results of judicial-speculation-made-law—divining what Congress would have wanted if it had thought of the situation before the court—demonstrate the wisdom of the presumption against extraterritoriality. Rather than guess anew in each case, we apply the presumption in all cases[.]"); *see also Doe T.L.J.*, 2020 WL 7700101, at *2 (disagreeing with *King* because its reasoning

12

predates *Morrison*); *Archut v. Ross Univ. Sch. Veterinary Med.*, No. 10-1681, 2012 WL 5867148, at *6 (D.N.J. Nov. 19, 2012) (same). Therefore, *King* is inapposite.

Having determined that Title IX does not apply to foreign conduct, the Court next turns to whether Zonshayn has alleged facts which warrant the domestic application of the statute. The TAC alleges that TAU violated Title IX in conducting its disciplinary investigation into the allegations against Zonshayn. TAC ¶¶ 163–67. According to the TAC, all of Zonshayn's alleged misconduct occurred in Israel, and the disciplinary proceedings were conducted in Israel by TAU's Israeli faculty and administrators. *See generally* TAC. The TAC does not allege that any of SSM (NY)'s New York-based employees played a role in the disciplinary process. Whether SSM (NY) and Zonshayn's accusers are American is irrelevant, *see Philips*, 2007 WL 3407728, at *3—the conduct that he challenges under Title IX occurred in Israel, and thus, Zonshayn seeks impermissible extraterritorial application of Title IX.

Accordingly, Defendants' motion to dismiss Claims One to Three for failure to state a claim is GRANTED.

2. State Law (Claims Four to Seven)

As the Title IX claims were the only basis for federal question jurisdiction, *see* TAC ¶ 8b, the Court has only diversity jurisdiction over Zonshayn's remaining state law claims, *see* TAC ¶ 7b. When sitting in diversity, the Court applies the laws of the forum state—in this case, New York. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties concede that New York law applies to Zonshayn's state law claims.[4]

---

[4] In his fourth cause of action, Zonshayn asserts that Defendants "created an express and/or implied contract under New York and Israeli law." TAC ¶ 184. But Zonshayn makes no attempt to plead his breach of contract claim under Israeli law, *see id.* ¶¶ 184–92, and does not brief this argument in his opposition to Defendants' motion to dismiss, *see* ECF No. 76 at 29.

13

First, Zonshayn alleges that in conducting the investigation, Defendants breached their express and/or implied contracts with him. TAC ¶¶ 184–192. "Under New York law, a student may sue [his] school for breach of a contract, namely that if the student complies with the terms prescribed by the university, [he] will obtain the degree [he] seeks." *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015) (cleaned up). But under New York law, any challenge to a university's disciplinary determination is subject to the Article 78 deferential standard of review, pursuant to which a university's disciplinary determination may only be overturned if it was "in excess of jurisdiction," "arbitrary and capricious or an abuse of discretion," or not "supported by substantial evidence." N.Y.C.P.L.R. §§ 7803(2)–(4); *see Kickertz v. N.Y. Univ.*, 110 A.D.3d 268, 272 (N.Y. App. Div., 1st Dept 2013); *see also Ansari v. N.Y. Univ.*, No. 96 Civ. 5280, 1997 WL 257473, at *2 (S.D.N.Y. 1997) (noting that in New York, "judicial review of academic and administrative decisions must be brought in an Article 78 proceeding"). Under Article 78 review, a private university's disciplinary determination will be upheld as long as it "substantially complied with its established disciplinary procedures." *In re Kickertz v. N.Y. Univ.*, 25 N.Y.3d 942, 944 (2015).

Here, although Zonshayn styles his claim as one sounding in breach of contract, it is obvious that he is challenging TAU's disciplinary process and determinations. *See* TAC ¶¶ 188–90. Under New York law, the Court is "instructed to convert a plaintiff's errant freestanding contract action into an appropriate Article 78 proceeding." *Doe v. N.Y. Univ.*, 537 F. Supp. 3d 483, 493 (S.D.N.Y. 2021); *see Walsh v. N.Y. State Thruway Auth.,* 24 A.D.3d 755, 756 (N.Y. App. Div., 2d Dept 2005) ("[T]he courts are empowered and indeed directed to convert a civil judicial proceeding not brought in the proper form into one which would be in proper form[.]" (quotation omitted)); *Jennings v. Teachers Coll.,* 920 N.Y.S.2d 241, 241 (N.Y. Sup. Ct., N.Y. Cnty. 2010) ("Otherwise put, actions challenging the subjective professional judgments of trained educators[]

14

are subject to review under Article 78 and not in a plenary action." (citation and internal quotation marks omitted)). The Court thus applies Article 78's deferential standard of review to Zonshayn's claim.

The TAC fails to plead sufficient facts to satisfy the Article 78 standard of review. The alleged procedural and substantive errors, *see* TAC ¶¶ 188–90, do not establish that the university's disciplinary decisions were "in excess of jurisdiction," "arbitrary and capricious or an abuse of discretion," or not "supported by substantial evidence." N.Y.C.P.L.R. §§ 7803(2)–(4). Therefore, Zonshayn fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Second, for substantially the same reasons, Zonshayn has not made out a promissory estoppel claim. TAC ¶¶ 193–200. Zonshayn's promissory estoppel claim is duplicative of his contract claim because it arises out of the same alleged promises. *See id.* ¶ 194; *Kleinberg v. Radian Grp., Inc.*, No. 01 Civ. 9295, 2002 WL 31422884, at *9 (S.D.N.Y. Oct. 29, 2002). Applying the Article 78 deferential standard of review, the Court concludes that Zonshayn's factual pleadings do not satisfy the requirements of the statute.

Third, Zonshayn also alleges a cause of action for intentional infliction of emotional distress. TAC ¶¶ 201–09. Under New York law, the tort of intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post. Co.*, 81 N.Y.2d 115, 121 (1993). The requirements of the first element—"extreme and outrageous conduct"—are "rigorous, and difficult to satisfy." *Id.* at 122 (quoting Prosser and Keeton, Torts § 12, at 60–61 (5th ed.)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broad. Cos. Inc.*, 27

N.Y.3d 46, 56 (2016) (quoting *Howell*, 81 N.Y.2d at 122) (holding that hospital and physician's actions, in allowing decedent's emergency room treatment and death to be filmed without consent and then broadcasted as part of a documentary series, were not so extreme and outrageous as to support plaintiffs' cause of action for intentional infliction of emotional distress).

Even accepting the factual allegations in the TAC as true and drawing all reasonable inferences in favor of Zonshayn, the Court cannot conclude that Defendants' actions amount to "extreme and outrageous conduct" sufficient to state a cause of action for intentional infliction of emotional distress. *See, e.g.*, *Chanko*, 27 N.Y.3d at 57–58; *Howell*, 81 N.Y.2d at 122. Zonshayn's allegations that the "above actions and inactions by Defendants were so outrageous and utterly intolerable that they caused mental anguish and severe psychological and emotional distress to [him]," TAC ¶ 207, are conclusory. *See Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 274 (S.D.N.Y. 2008); *see also Twombly*, 550 U.S. at 555.

Lastly, Zonshayn pleads a cause of action for fraudulent inducement and alleges that he "was told that the investigation would take place promptly, but instead the investigation dragged on." TAC ¶¶ 210–15. For a fraud claim to survive a motion to dismiss, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To comply with Rule 9(b)'s heightened pleading standard, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 13 Civ. 2107, 2014 WL 2510809, at *4 (S.D.N.Y. May 28, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). "A complaint alleging fraud, moreover, must plead facts that give rise to a strong inference of scienter." *Id.*

16

Because Zonshayn fails to plead any of the elements of his fraudulent inducement cause of action with particularity, *see* TAC ¶¶ 210–15, Defendants' motion to dismiss Claims Four to Seven for failure to state a claim is GRANTED.[5]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiff's claims for failure to state a claim is GRANTED, ECF No. 66.  The Clerk of Court is directed to terminate the motions at ECF Nos. 66 and 69.

SO ORDERED.

Dated: January 3, 2023
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[5] Because Zonshayn's claims are dismissed under Rule 12(b)(6) for failure to state a claim, the Court need not reach TAU's motion to dismiss the TAC under the doctrine of *forum non conveniens*.  See ECF No. 69.